**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OPTICS INNOVATION LLC,** | |
| *Plaintiff,* | **No. 2:26-cv-422** |
| v. | |
| **HMD GLOBAL and HMD GLOBAL OY,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Optics Innovation LLC by and through its undersigned counsel, files this Complaint against Defendants HMD Global ("HMD Global") and HMD Global OY ("HMD Global OY") (collectively, "HMD" or "Defendants") for infringement of United States Patent No. 10,687,708 (the "Asserted Patent"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for infringement of the Asserted Patent arising under the patent laws of the United States, Title 35 of the United States Code, to obtain damages resulting from Defendants' unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, and/or having imported into the United States products that infringe or indirectly infringe of one or more claims of the Asserted Patent.

**THE PARTIES**

2.      Plaintiff Optics Innovation LLC ("Optics" or "Plaintiff") is a corporation organized and existing under the laws of the state of Delaware with a place of business at 203 Anderson Street, Portland, ME.

1

3.      On information and belief, Defendant HMD Global is a company organized and existing under the laws of Finland, with its principal place of business located at Bertel Jungin aukio 9, 02600, Espoo, Finland. On information and belief, HMD Global may be served pursuant to the Texas Long Arm Statue and the provisions of the Hague Convention.

4.      On information and belief, Defendant HMD Global OY is a company organized and existing under the laws of Finland, with its principal place of business located at Bertel Jungin aukio 9, 02600, Espoo, Finland. On information and belief, HMD Global OY may be served pursuant to the Texas Long Arm Statue and the provisions of the Hague Convention.

5.      On information and belief, Defendants HMD Global and HMD Global Oy are affiliated companies. On information and belief, HMD Global and HMD Global Oy are agents or alter egos of each other such that the actions by one is attributable to the other. Alternatively, HMD Global and HMD Global Oy form a joint business enterprise such that the actions by one is attributable to the other. Herein, HMD Global and HMD Global Oy are collectively referred to as "Defendants."

6.      On information and belief, Defendants do business in Texas and in the Eastern District of Texas, directly or through intermediaries. Defendants market and distribute smartphones in Texas and throughout the United States directly or through intermediaries, and offer their products and/or services, including those accused herein of infringement, to customers and potential customers in Texas, including in the Judicial District of the Eastern District of Texas.

7.      In addition, Defendants have authorized sellers and sales representatives that offer and sell products accused herein of infringement through and/or into the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605.

2



## JURISDICTION AND VENUE

8.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 7 above.

9.    Jurisdiction and venue for this action are proper in this Judicial District.

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

11.    This Court has specific and general personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. This Court has personal jurisdiction over Defendants at least because, through HMD Global and HMD Global Oy's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial

3

District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

12. For example, Defendants have authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Defendants have derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

13. Defendants have each established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

14. Venue is proper against Defendants pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are foreign corporations not resident in the United States, and venue is proper in any district against a foreign corporation. *See also In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants).

**JOINDER**

15.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 14 above.

16.    Joinder is proper under at least Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 at least because Defendants' infringing conduct as alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the U.S., offering for sale, and/or selling of constituents of the same accused products, and questions of fact common to all Defendants will arise in this action.

17.    HMD Global and HMD Global Oy each make, use, import, offer for sale, and/or sell digital imaging devices, including smartphones accused of infringement herein.

18.    Each Defendant is accused of infringing the Asserted Patent by, inter alia, making, using, importing, offering for sale, and/or selling digital imaging devices, including smartphones.

19.    Based on the above, factual questions relating to HMD Global's and HMD Global Oy's infringement will substantially overlap.

**THE PATENT-IN-SUIT**

20.    The Asserted Patent relates to image capture devices, including smartphones and tablets.

21.    U.S. Patent No. 10,687,708 ("the '708 Patent")[1], is entitled "Method and Apparatus For A Compact And High Resolution Mind-View Communicator," and was duly and legally issued on June 23, 2020. The '708 Patent issued from U.S. patent application Serial Number 16/120,326,

---

[1] U.S. Patent No. 10,687,708 is a public document available from the United States Patent and Trademark Office and, as of May 19, 2026, is available at the following link: https://ppubs.uspto.gov/api/pdf/downloadPdf/10687708?requestToken=eyJzdWIiOiI0MGI4MTE xZC0xNjljLTQ1M2YtODkzNy0zMDZiOTA1NDU2NGEiLCJ2ZXIiOiIzYTVkYTFiZS00Mjhk LTQ5MGEtYWI2ZS1jNjZkZTczNDgyMjgiLCJleHAiOjB9.

filed September 3, 2018 as a continuation of an application that issued as U.S. Patent No. 10,064,552. The term of the '708 Patent has not expired. The '708 Patent is valid and enforceable, and Optics Innovation LLC is the owner and assignee of all rights, title, and interest in the '708 Patent and, at a minimum, of all substantial rights in the '708 Patent. As such, Optics Innovation LLC has standing to sue and the right to recover damages for the infringement of the '708 Patent and pursue any and all causes and remedies, whether legal or equitable, related thereto.

22.    Each of the claims of the '708 Patent is presumed to be valid.

23.    None of the claims of the Asserted Patent are directed to an abstract idea, and the claims limitations, individually and as an ordered combination, involve more than performance of well understood, routine, and conventional activities previously known to the industry as of the priority date of the Asserted Patent.

24.    None of the claims of the Asserted Patent are directed toward fundamental economic practices, methods of organizing human activities, an idea itself, or mathematical formulations.

25.    The claims of the Asserted Patent are directed to a specific area of application of digital imaging and thus do not preempt others from using other methods and systems.

26.    The claims of the Asserted Patent also recite more than generic computer functionality and recite elements that were not purely conventional as of the priority date of the Asserted Patent.

27.    The claims of the Asserted Patent recite specific improvements over prior art and conventional systems, apparatuses, and methods and represent meaningful limitations and/or inventive concepts. Further, in view of these specific improvements, the claims of the Asserted Patent, when such claims are viewed as a whole and in ordered combination, were not routine,

6

well-understood, conventional, generic, existing, commonly used, well-known previously known, or typical as of the earliest priority date of the Asserted Patent.

28.     None of the claims of the Asserted Patent are representative of the Asserted Patent's other claims.

29.     The Asserted Patent addresses and overcomes the limitations of smart phones, tablets, and digital imaging devices that are of a relatively small form factor.  Such devices include cameras typically having smaller lenses and detector chips with lower pixel count and thus a lower image resolution.'708 Patent, 15:56–63. The Asserted Patent claims devices, including smartphones and tablets, that, among other things, comprise at least two cameras which are used to generate an output image that is an improvement over a conventional image generated by conventional imaging devices at the time of the Asserted Patent's priority date.

30.     The asserted claims of the Asserted Patent are directed to improving digital imaging technology through methods and apparatuses comprising a lower resolution camera and higher resolution camera capable of capturing images of a scene and at least one processor calculating the distance to an object in a scene and producing an output image in which portions of the scene around the object are blurred in a manner that mimics the scene as if were to be viewed by human eyes.

31.     The Asserted Patent describes existing devices that contain zooming features that are required to bring an object much closer to a viewer. '708 Patent, 4:8–14.  The Asserted Patent describes the solution of creating a human eye's view through an arrangement of two or more cameras. *See* '708 Patent, 8:4–48. Using more than one camera, the distance of any object from the camera can be estimated. *See* '708 Patent, 19:12–16 ("the object distance is estimated via triangulation applied to the scene recording cameras").

32.     It is the capture by two cameras of two images of a scene containing an object by cameras having different image resolutions and fields of view, and executing a distance calculation of the object in the scene, that allows for the processor to create an output image that mimics that of how human eyes perceive the world (i.e., an object in focus, with out-of-focus periphery).

33.     The asserted claims of the '708 Patent expressly require a multi-camera imaging apparatus, such as smartphones and tablets, having the capability of capturing first and second images of a scene by cameras having different image resolutions and fields of view as well as, *inter alia*, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or, similarly, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region,

wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8. These elements improve upon digital imaging technology. In particular, the processor uses the two images of a scene captured by separate cameras to calculate the distance to an object in a scene and effectively applying the distance information to generate an output image that resembles a human eye's view of the object (i.e., an object in focus, with out-of-focus periphery). Thus, the asserted claims of the '708 Patent are directed to specific improvements to digital imaging and are not directed to an abstract idea.

34.    The asserted claims of the '708 Patent are directed to a specific field of application, a multi-camera image capture device, such as smartphones and tablets, or method, that utilizes a high resolution and lower resolution image to calculate distance from the cameras to an object for the purposes of generating an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object. The asserted claims of the '708 Patent therefore do not preempt others from using the general concepts of image enhancement or image alteration.

35.    The asserted claims of the '708 Patent recite more than generic computer functionality and recite elements that were not purely conventional as of its priority date.  The asserted claims of the '708 Patent recite at least the following steps or capabilities which, either alone or as an ordered combination, were unconventional and unique, and were not well-known, routine, or conventional: capturing first and second images of a scene by cameras having different image resolutions an fields of view as well as "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene

9

from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or similarly, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8. These elements were not well-known, routine, or conventional because of at least the capability of using a multi-camera device, such as smartphones and tablets, having two cameras that have different image resolutions and fields of view to capture a scene, and a processor to calculate based on the images the distance to an object within that scene, and use the distance to generate an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object did not exist in conventional imaging systems as of the priority date of the '708 Patent.

**DEFENDANTS' INFRINGING PRODUCTS**

36.     Smartphones and tablets have become adept at capturing digital images using multiple built-in cameras. These cameras offer different features for image effects, including image enhancement, portrait mode, and high dynamic range. These smartphones and tablets contain processors programmed with instructions to capture and enhance images.  These processors work with the several device cameras to apply effects to the images and save each image to memory.

37.     HMD makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartphones. These devices include, among others, the HMD Skyline, HMD XR21, Nokia XR21, and Nokia C210 smartphones. HMD actively markets and supports sales of these smartphones through its website and through third-party sellers, such as Best Buy and Amazon.

38.     HMD's devices are designed to take clear, high resolution digital photographs. Consumers often purchase these products for their ability to generate high resolution photographs with different visual effects. In order to achieve this, HMD has designed its smart devices with multiple cameras, each offering different capabilities and resolutions.  These devices include, for example, a wide-angle camera, an ultra-wide camera, and/or a telephoto camera.

39.     HMD's smartphones include additional camera modes and features.  Portrait mode is one such example, wherein the device utilizes at least two captured images to calculate distances to objects within the image scene in order to emphasize the object by blurring the area around the object, known as the "Bokeh" effect.

**COUNT I: INFRINGEMENT OF**
**U.S. PATENT NO. 10,687,708**

40.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 to 39 above.

41.     HMD, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '708 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smart devices, such as smartphones, that embody the inventions claimed in the '708 Patent, in particular, at least claim 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, within the United States and within this District. HMD has been and is engaged in one or more of these direct infringing activities related to its smartphones, including at least: (i) the HMD Skyline, HMD XR21, Nokia XR21, and Nokia C210 and (ii) any other device, such as tablets, that comprise two or more cameras and includes the Portrait mode (collectively hereinafter the "'708 HMD Accused Products").

42.     HMD sells the '708 HMD Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales, including through its website.

43.     Notice of the factual bases of Plaintiff's allegations of infringement by the '708 HMD Accused Products is provided in the claim charts attached as Exhibits A-C.[2] Exhibits A-C demonstrate how the '708 Patent is infringed by reference to the HMD Skyline, Nokia XR21, and Nokia C210 smartphones, which, on information and belief, are representative of the infringing aspects of at least the devices identified in Paragraph 41. The attached infringement charts are based on Plaintiff's current understanding of the '708 HMD Accused Products based on information publicly available at the of this filing. This selection of claims and products should not be considered limiting of HMD's infringement. Additional claims and products will be

---

[2] The exhibits illustrate the infringement of the respective devices as to the asserted apparatus claims. The asserted method claims are likewise infringed on the same bases as addressed regarding the apparatus claims.

disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery.

44.    HMD, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '708 Patent, including at least claims 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.  HMD's customers directly infringe at least by using the '708 HMD Accused Products. HMD retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

45.    HMD has actual notice of the '708 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of HMD obtaining any actual knowledge of the '708 Patent prior to commencement of this lawsuit will be confirmed during discovery.

46.    HMD indirectly infringes the '708 Patent by inducing third parties, including customers, to use the '708 HMD Accused Products in their normal and customary way and for their intended purpose. For example, on information and belief, HMD also induces such third parties by (i) selling the '708 HMD Accused Products to third parties when such products are designed to infringe the '708 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '708 Patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for operating the '708 HMD Accused Products in their customary way; (iv) advertising and promoting the '708 HMD Accused Products, including assisting purchasers in locating local dealers for specific smart devices, through its website and various promotional materials; and/or (v) providing ongoing

13

warranties, support, maintenance, and registration to such third parties relating to the '708 HMD Accused Products.

47.    Upon information and belief, HMD knows that its customers, distributors, and resellers follow and/or use HMD's support, instructions, user guides, and technical specifications and use, offer to sell, or sell the '708 HMD Accused Products within the United States.  HMD directly benefits from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '708 HMD Accused Products.

48.    On information and belief, HMD will continue to engage in activities to encourage customers, distributors, and resellers that will constitute inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '708 Patent.

49.    HMD, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smart devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing the '708 HMD Accused Products for use in practicing the patented method, knowing that such devices are material to the invention claimed by at least claims 1, 3, and 7 of the '708 Patent, and are especially made or especially adapted for use in infringing the patented method and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.    HMD's direct and indirect infringement of the '708 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless HMD ceases its infringing activities, it will continue to injure Plaintiff.

51.     On information and belief, HMD continues to infringe the '708 Patent by making, using, selling, offering for sale and/or importing in the United States the '708 HMD Accused Products and by inducing and/or contributing to the direct infringing use of the '708 HMD Accused Products by others, in reckless disregard of Plaintiff's patent rights.   HMD continues its infringement notwithstanding actual knowledge of the '708 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '708 Patent. HMD's infringement of the '708 Patent, following its knowledge of the '708 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

52.     On information and belief, HMD will continue intentionally and deliberately infringing, notwithstanding actual knowledge of the '708 Patent. HMD's future acts of infringement will constitute continuing willful infringement of the '708 Patent.

## JURY DEMAND

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

i.     A judgment declaring that Defendants have directly and/or indirectly infringed and is directly and/or indirectly infringing one or more claims of the Asserted Patent;

ii.     A judgment awarding Plaintiff compensatory damages as a result of Defendants' infringement of one or more claims of the Asserted Patent, together with pre-

and post-interest and costs, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

iii.    A judgment awarding Plaintiff treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of one or more claims of the Asserted Patent;

iv.    A judgment declaring this case exceptional and awarding Plaintiff its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

v.    A grant of a permanent injunction enjoining Defendants from further acts of infringement of one or more claims of the Asserted Patent without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.    Such other and further relief the Court deems just and equitable.

Dated: May 21, 2026

Respectfully Submitted,

*/s/ Daniel S. Stringfield w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Daniel S. Stringfield (Admitted ED Tex)
IL Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (Admitted ED Tex)
IL Bar No. 6216483
tmaloney@nixonpeabody.com
Randal S. Alexander (Admitted ED Tex)
IL Bar No. 6298199
ralexander@nixonpeabody.com
Daniel D. Georgiev (Admitted ED Tex)
IL Bar No. 6326950
Texas State Bar No. 24136166
dgeorgiev@nixonpeabody.com
**NIXON PEABODY LLP**
70 W. Madison St. Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

Patrick O. Doyle (Admitted ED Tex)
CA Bar No. 329810
pdoyle@nixonpeabody.com
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
Fax: (415) 984-8300

***Attorneys for Plaintiff***
***Optics Innovation LLC***

17